(a) That part of the opinion of the Court which decided this point, was appended to the rest by a writer, or being borrowed of me by the Chief Justice after it was prepared for the press & before publication, was torn off by him, as of no importance. I did not discover the fact, till after the book was printed, when the Chief Justice relied on me on my great accuracy in the matter of marginal abstracts!

J. G.

# CASES

## IN THE

# SUPREME JUDICIAL COURT,

### FOR THE COUNTY OF

# LINCOLN.

## MAY TERM,

## 1825.

## THE INHABITANTS OF BOOTHBAY *vs.* THE INHABITANTS OF WISCASSET.

The domicil of a fisherman, who usually lived in his boat in the summer, was in this case holden to be in the place to which he most usually resorted in the winter for board.

(a) Where the plaintiff appealed from the judgment of the Court of Common Pleas, and in this Court had a verdict for less than 100 dollars, and the judgment thereon was delayed by the defendant's motion for a new trial, until the interest on the verdict increased the amount for which judgment was to be rendered to more than 100 dollars ;—it was holden that the plaintiff, and not the defendant, was entitled to costs on the appeal, under *Stat.* 1822, *ch.* 193, *sec.* 4.

IN this case the question was upon the domicil of one *Aaron Abbot*, a pauper, on the 21st day of *March* 1821.

At the trial before *Weston* J. it appeared that the pauper was by occupation a fisherman, living constantly in his boat from the opening of the spring till the commencement of winter ;—that he resided in the house of one *Hunewell*, in *Wiscasset*, from *December* 1820, till about the first of *April* 1821, working for his board, but receiving no wages ;—that during this time he was absent but twice, once to procure repairs for his boat, and once to attend the funeral of his sister's child ;—that he had no family of his own—that his father had long resided in *Boothbay* ;—and that in *March* 1822, the pauper, being frozen and unable to support himself, was carried to the house of his father, who refused to

suffer him to remain there ; whereupon the overseers of the poor placed him in another family where he was nursed and relieved. There was some evidence tending to shew that one of the days when he was absent was the 21st day of *March* 1821 —that his life was purely itinerant, and that when on shore he frequently resorted to *Hunewell's,* coming and going at his pleasure. About the 12th of *April* 1821, he betook himself to his boat, to follow his customary employment for the season.

The Judge hereupon instructed the jury that in order to fix the habitancy of the pauper in *Wiscasset,* they ought to be satisfied, first, that he did in fact reside there on the 21st day of *March* 1821 ; and secondly, that he had his *home* there at that time ;— that within the meaning of the act, *home* would be indicated by residence ; unless it appeared that the party's domicil was elsewhere, and that he had left it for a temporary purpose, with an intention to return ;—that it appeared that the habits of the pauper were vagrant, and that the only place which could be considered as his domicil, prior to his going to *Wiscasset,* was his father's house in *Boothbay* ;—that the pauper being of age, and emancipated from his father, the question whether the house of the latter was to be considered the pauper's home, would depend on the will of his father, who might refuse to grant him this privilege. But if the pauper's home was his father's house prior to his going to *Wiscasset,* they would next inquire whether he went to the latter place for a temporary purpose, with an intention again to return and reside at his father's. If they were satisfied that he resided at *Wiscasset* on the 21st of *March* 1821, and that he had no home elsewhere to which it was his intention to return, they would find for the plaintiffs ;—which they did. And the Judge, at the request of the defendants, reserved the case for the consideration of the whole Court.

*Orr,* for the defendants, observed that as the domicil of the pauper was once, without question, at his father's house in *Boothbay,* it must be taken to be still there, unless the case shewed that he had abandoned it with the intention of gaining another permanent dwelling elsewhere. He must at least have left it without the *animus revertendi.* In the present case no such evi-

dence appears ;—and the law therefore adjudges his domicil to be in the place of his nurture, his education, his business, and of those objects to which he was bound by the ties acknowledged by mankind. If the father, in his own poverty, referred the pauper to the charities of the town, he was not therefore disfranchised ; and the fact of his being carried thither for relief, shews *what* place was regarded as his home.

*Allen*, for the plaintiffs.

Mellen C. J. delivered the opinion of the Court.

The principal questions on the trial of this cause appear to have been whether the pauper resided in *Wiscasset* on the 25th of *March* 1821; and if so, in what character and with what intention ;—whether it was his home, in the legal sense of the term ; or only the place of his temporary abode during the winter, with the design to return, in the spring, to a legal home elsewhere. The testimony in relation to these points was all submitted to the jury ; and under the instructions given them by the presiding Judge, their verdict has established the following facts ;—1. that the pauper was residing in *Wiscasset* before and on the 21st of *March* 1821 ; and 2dly, that at the time of his going to *Wiscasset* to reside, he had no home elsewhere, to which he had any intention to return. These points are thus settled. If we look to the habits and character of the pauper, and to his conduct and mode of living while in *Wiscasset*, we may ascertain whether, by his residence in that town on the day the act was passed, he gained a settlement there. He was a single man and had no family ;—followed the business of fishing in the summer, living in his boat. It does not appear how long before this time he had left his father's house, or in what places he had usually spent his winters. But during the winter of 1820 and 1821, it seems he lived in the family of one *Hunewell*, and paid for his board by his labor. We do not perceive why, in this respect, he must not be considered as any other boarder, paying for his board in cash. He was rightfully and by contract, one of *Hunewell's* family ; and his house must have been deemed as the pauper's place of abode in respect to the service of legal process. As he had no *home* else-

where, we are of opinion that the facts in the case are such as to shew that the pauper resided, dwelt and had his home in *Wiscasset* within the true intent and meaning of the statute. We are satisfied with the correctness of the instructions of the Judge to the jury ; and accordingly there must be judgment on the verdict.